August and Constant Goffinet, Plaintiffs and Appellees,
  *v.* Cipriano Manrique and Successors of Aguayo Broth-
  ers & Co., Ltd., Defendants and Appellants.

No. 3507. Argued June 16, 1925.—Decided July 20, 1925.

1. Debt—Payment—Payment by Mistake—Error of Fact in Delivery.—
Where sugar of a certain value is delivered to a person not entitled to it
on the statement of a defendant to the plaintiffs that, with the exception of
the latter's credit, the former is the owner of all the other credits to be
paid with the value of the sugar, the error in making the delivery is one
of fact and not of law.

2. Id.—Financing Contract—Preferred Credit—Estoppel.—A creditor having
joined others in a contract in which it was stipulated that from the product
of the sugar cane of the debtor should be deducted a certain amount advanced
and the balance be distributed among the said creditors, any other financing
creditor, but not the said creditor, can sue on his financing contract and
plead his preferred right to the balance.

3. Id.—Appeal—Evidence—Contradictory Evidence.—When the question in-
volved in an action turns on a conflict in the evidence and the trial court
decides it in favor of one party and under the circumstances of the case
had reason for so adjusting the conflict, the judgment will be affirmed.

4. Id.—Id.—Costs.—Where a party is manifestly temerarious in not returning
what he received from another by mistake and in defending an action to
recover the amount so paid, the imposition of costs upon him is not erroneous.

District Court of Humacao, Pablo Berga, J. Judgment for the
  plaintiffs in an action of debt. *Affirmed.*

*González Fagundo & González, Jr.,* for the appellants. *Henry G.
  Molina* for the appellees.

Mr. Justice Franco Soto delivered the opinion of the court.

On July 10, 1918, the plaintiffs and defendants, together
with Gregorio Solá Delgado and other creditors of Del-
gado, entered into an agreement containing, among others,
the following stipulations:

"(c) Upon the execution by Solá Delgado of the corresponding
financing contract August and Constant Goffinet will advance to him
such sums as they may agree upon for planting sugar cane by him
on the properties described in the first and second paragraphs of
this contract and on another property which the said Solá Delgado
has leased from the Succession of Gerardo Puig, and the said
Goffinets agree to furnish him the sum of $105 monthly with which
to pay the lease instalments on the said property to the Succession
of Puig, charging the same to the said financing account. After

grinding the sugar cane already planted by Solá Delgado the Goffinets shall proceed to collect the sums that he may be owing on account of advances and lease instalments, leaving the balance in their possession at the disposal of the creditors who are parties to this contract, including themselves, to be distributed in the manner and proportion to be stated hereafter; but if there should be no balance and on the contrary Solá Delgado should remain in debt for the lease instalments advanced by the Goffinets, the said instalments shall be paid proportionally by the creditors, who may dispose of the properties which Manrique delivers to the said Solá Delgado so as to cover by them, or such part thereof as may be necessary, the amount of such lease instalments.

"(d) Gregorio Solá Delgado agrees in the most solemn manner to plant, cultivate and harvest, personally or by his employees, sugar cane, tobacco and other crops that may be convenient on the properties described in the first and second paragraphs of this contract and the property which he has leased from the Succession of Gerardo Puig, and to put at the disposal of his creditors, parties hereto, the net product of said crops to be distributed among his said creditors in proportion . . ."

Relying on this agreement, the plaintiffs alleged in the complaint that Gregorio Solá Delgado delivered to them all of the sugar cane financed by them, amounting to a total of $22,514.07, and that after deducting the $14,279.84 due to the plaintiffs for money advanced there remained a balance of $8,234.23 for the payment of all of the credits outstanding against the said Solá and acknowledged by him in the said contract of July 10, 1918; that during the year 1920 the plaintiffs, at the request of defendant Manrique, delivered to him sugar to the amount of $8,234.23 manufactured from the sugar cane referred to in the contract, because they were informed by the said defendant that he had acquired all of the credits stated against Solá; that in 1922 defendants Successors of Aguayo Brothers & Co., Ltd., brought an action in the District Court of Humacao against the plaintiffs herein to recover the sum of $788.49 by virtue of the stipulations of the contract of July 10, 1918; that upon extrajudicial demand by Successors of Aguayo

Brothers & Co., Ltd., before filing the complaint the plaintiffs immediately made demand upon defendant Manrique to return the $788.49 with interest in order to pay the account of the plaintiff firm, defendant herein, or that Manrique pay the same directly to said firm, which the defendant refused to do although he admits that the said account was never paid.

In his answer the defendant admitted some allegations and denied others and set up, among other defenses, the allegations marked (a) and (d) in the answer, which read as follows:

"(a) That after the signing of the contract of July 10, 1918, described in the complaint, in addition to the financing credit for planting which the Goffinets gave to Gregorio Solá Delgado, the latter had to make two other financing contracts for the planting and cultivation because the former was insufficient. The first of these contracts was with Antonio Longo González for the sum of $2,757.70 for fertilizers, and the second with the defendant for the sum of $3,461.49, cash supplied for the payment of laborers' wages and hiring oxen. These contracts were recorded in the registry of agricultural contracts.

"(d) That according to instructions of the said Succession of Gregorio Solá Delgado the defendant paid for their account the expenses of the last illness and burial of their deceased ancestor, as well as for the intestate proceedings, and also attended for many months to the personal support of the widow and minor children of the said ancestor, and credited the balance to the account of the said succession which was not thereby balanced, there remaining a balance in favor of the defendant for the sum of more than $8,000."

After ruling that said defenses (a) and (d) should be stricken out as impertinent to the issue, the district court sustained the complaint and from that judgment the present appeal was taken, the appellant assigning the following errors:

"First.—In holding that the complaint stated facts sufficient to constitute a cause of action.

"Second.—In ruling that defenses (a) and (d) set up in the an-

swer to the complaint'by the defendant-appellant should be stricken out.

"Third.—In holding that the evidence sustains the essential allegations of the complaint.

"Fourth.—In holding that the defendant-appellant could not purchase from the administrator the sugar of the Succession of Gregorio Solá without paying the credit of Aguayo Brothers & Co., Ltd.

"Fifth.—In holding that defendant Manrique was guilty of such temerity as to warrant his being adjudged to pay the costs."

[1] The appellant bases his demurrer of failure to state a cause of action on the following grounds: (1) Failure to state in the complaint the net product of the sugar cane subject to distribution; (2) contributory negligence on the part of the plaintiffs in not ascertaining the truth of the information given by Manrique that he had acquired all of the credits against Solá; (3) that the mistake alleged is one of law, and (4) that the money is claimed for Aguayo Brothers & Co., Ltd., with whom Manrique has no legal connection.

The first two grounds, when considered in connection with the language of the complaint, are sufficient to warrant the conclusion that if they have any influence it is rather as an element of evidence, which we can consider hereafter. The fourth ground is also lacking in importance, for it is an objection to the prayer of the complaint and not to its essential allegations.

The only ground that can be seriously considered is that indicated in number 3. Although the complaint styles the action as one "for recovery of money and performance of contract," it is really an action under section 1796 *et seq.* of the Civil Code to recover money unduly paid, and it is alleged that the mistake of the plaintiffs in delivering to Manrique all sugar produced from the sugar cane of Solá because Manrique informed them that he had acquired all of the credits referred to in the contract of July 10, 1918, is an error of law, and that in accordance with both the

American and the Spanish decisions, he who pays what he does not owe can maintain an action to recover the amount paid when the error is one of fact, but not when it is one of law. He cites in support of this proposition the cases of *Arandes* v. *Báez,* 20 P.R.R. 364; *American Railroad Company* v. *Wolkers,* 22 P.R.R. 264; *Succession of Marín* v. *Municipality of Arecibo,* 28 P.R.R. 477. These cases, however, are not in point. Here the question is, first, that the defendant had no right to receive the sugar produced from the sugar cane without paying its total value to the plaintiffs to be distributed according to the terms of the said contract; and, second, that Manrique received the balance which should have been distributed among Solá's creditors because of an error of fact due to the statement made by the defendant to the plaintiffs, as alleged, that he was the owner of all of the credits against Solá, with the exception of that of the plaintiffs.

[2] The lower court acted correctly in ordering that defenses (*a*) and (*d*) be stricken out. The appellant insists that the contract of July 10, 1918, left Gregorio Solá free to enter into other financing contracts in case the sums advanced by the plaintiffs under the original contract to which defendant Manrique was a party should be insufficient. The purpose of this contention seems to be that inasmuch as Gregorio Solá entered into other financing contracts thereafter, among them one with defendant Manrique, he could not dispose of the balance to which the said contract of July 10, 1918, referred until after the subsequent financing contracts had been satisfied. The defendant's position is rare, inasmuch as he is not a third person in relation to the contract of July 10, 1918, in which he participated as one of the many creditors, and such defense might perhaps be properly set up by any other financing creditor foreign to that contract, alleging his preferred right.

[3] The defenses that were properly stricken out having no force or value, the question was reduced to a conflict

in the evidence which the court adjusted in favor of the plaintiffs.

In the contract of July 10, 1918, which was nothing but an agreement among creditors to give an extension of time to and aid their debtor, Gregorio Solá, the amount of the debt of each is stated. In the same document it was agreed also that the Goffinets, the plaintiffs, would sign a financing contract to furnish Solá with certain funds for cultivating the sugar cane plantations, the debtor expressly authorizing the plaintiffs in clause (*e*) to deduct such sums as Solá should be owing them upon grinding the cane, retaining the balance at the disposal of the creditors listed in the contract, including the plaintiffs, to be distributed as provided in paragraph (*d*).

The sums advanced to Solá amounted to $14,279.84, which with the $7,796.05 of the creditors and stated in the contract make a total of $22,075.05.

The sugar cane of the debtor amounted to 2,255.85 quintals and produced $22,514.07.

It is clear that the sugar cane produced sugar of a value sufficient to pay all of the debts stated in the contract of July 10, 1918. After paying the advanced amount of $14,279.84 there remained, therefore, the sum of $8,234.23, for payment in full of the credits against Solá acknowledged by him in the said contract, as follows:

| | |
|---|---:|
| August and Constant Goffinet | $ 533. 67 |
| N. Santini & Co. | 2, 290. 45 |
| Cipriano Manrique | 2, 959. 47 |
| J. V. Ruiz & Co. | 519. 32 |
| V. Caraballo & Co. | 704. 81 |
| Aguayo Brothers & Co., Ltd. | 788. 49 |
| Total | $7, 796. 21 |

Sale and delivery of all of the sugar was made to Cipriano Manrique, who paid to the plaintiffs all that was due them under the contract of July 10, 1918, and was also bound to pay $8,234.23 as the balance left from the pro-

ceeds of the sugar, in order that the plaintiffs could perform the stipulations of the agreement by paying the other credits, including that of $788.49 in favor of the firm of Aguayo Brothers & Co., Ltd., which is the only subject-matter of the complaint; but the said balance remained, however, in the possession of defendant Manrique, and here arises the real issue in this case, for everything is reduced to a conflict between the testimony of Prudent Wittemans, attorney in fact of the plaintiffs and manager of the Santa Juana Central, and that of defendant Cipriano Manrique.

The former testified as follows:

"Before these transactions Manrique called me by telephone and said that he had purchased or intended to purchase the sugar of the Solás, if it was not inconvenient for us. The Santa Juana Central, which I represent, sometimes purchases sugar from its contracted planters. The sugar was bought by Manrique and I informed him that in accordance with our agreement we could not deliver the sugar unless I received the price in full, to which Manrique replied that he had all of the credits except that of the central which belonged to the Goffinets; that we were the only creditors, and that he would pay the advances owing by the heirs of Solá, debiting the same to their account and crediting the sugar to his account.

"Did Manrique tell you that he was the owner of all of the credits except that of the Goffinets? He did not say that he was the owner; but that we were the only creditors of the heirs of Solá.

"Knowing that there was a contract under which the Goffinets had agreed to retain the balance of the product of the cane after deducting the amount of their debt, why did you deliver the sugar to Manrique?

"Attorney González.—That is entirely immaterial.

"Attorney Antongiorgi.—It is very material. I want to know why the witness, who acted as attorney in fact of the plaintiffs in this case, knowing of that contract, yet delivered to Manrique all of the sugar which he should have retained in order to pay the debts. .

"Judge.—You may answer.

"Attorney González.—I take exception.

"Witness.—I delivered the sugar to Manrique because of his

statement that we were the only two creditors, and we having collected the $500 stipulated in the contract, Manrique remained as the sole creditor of the heirs of Gregorio Solá and therefore could dispose of the balance.''

Later the witness said that he did not recollect whether the conversation was personal or over the phone, but in the substantial part which we have transcribed the witness affirmed his statements. Manrique denied them and testified that the statements of Wittemans were false, but the trial court adjusted the conflict in favor of the plaintiffs in which, in our opinion, it acted correctly, for apart from the mass of circumstances attending this case, the same witness, Wittemans, gave in a logical manner the reason for his statement when upon being cross-questioned as to whether he required any proof that Manrique was the assignee of the credits, he replied: ''No; the statement of Manrique was sufficient, for he is a person of reliability and besides at that time I had in the warehouse merchandise belonging to him worth more than $100,000.'' This answers also the contention that the plaintiffs were negligent in not ascertaining the truth of the statements of Manrique. Perhaps, as the appellee maintains, that imputation might have some ground in connection with the claim made directly by Aguayo Brothers & Co. to the plaintiffs, but not as to defendant Manrique himself, in whom the plaintiffs confided by leaving in his possession the balance of the proceeds of the sugar under the error into which he led them of making them believe that he and the Goffinets were the sole creditors of the heirs of Gregorio Solá Delgado, deceased. Without that inducement to err it does not seem natural that the plaintiffs would have parted with what they had in their possession for distribution according to the authorization that they received from the creditors under the contract.

We do not see how the question can be influenced by the appellant's allegation that the delivery of the sugar cane

to the plaintiffs was not proved. It appears, however, that although the said product was delivered to the Societé Anonyme des Sucreries de Saint Jean, owner of the Santa Juana Central of Caguas, the plaintiffs were the financing creditors of the planters contracted with by the said central and the sugar was subject to the financing contracts. In this connection Wittemans testified as follows: "When there is a financing credit with a contracted planter, if the planter sells the sugar the Santa Juana Central delivers the sugar and retains the amount due to be credited to the Goffinets." In this case the central was given notice of the financing contract to which the agreement of July 10, 1918, refers and the plaintiffs were expressly authorized, after the money advanced by them was paid, etc., to retain in their possession the balance in order to pay the other creditors enumerated in the said contract.

[4] The court below did not err in imposing the costs upon defendant Cipriano Manrique. His temerity was manifest in defending this suit and in not returning what he had unduly received from the plaintiffs.

For all of the foregoing the judgment appealed from must be affirmed.

Mr. Justice Wolf took no part in the decision of this case.